# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JOHN MOORE, III,

      Plaintiff,

v.                              Case No. 3:17-cv-503-J-32PDB

G. RAMOS,

      Defendant.

## ORDER

### I. Status

Plaintiff, an inmate of the Florida penal system, is proceeding on an Amended Civil Rights Complaint (Doc. 17). The only claim that remains is against Dr. G. Ramos, a medical doctor at Columbia Correctional Institution.[1] Plaintiff claims Dr. Ramos was deliberately indifferent to his serious medical needs on November 14, 2016. See Doc. 17 at 18.

Before the Court are the parties' cross motions for summary judgment. See Plaintiff's Affidavit Summary Judgment Motion (Doc. 176); Defendant Greto Ramos, M.D.'s Motion for Summary Judgment (Doc. 177), with exhibits

---

[1] Plaintiff voluntarily dismissed the claims against Jurkash, Tomlinson, Neel, and Jernigan. See Orders (Docs. 90, 124). Plaintiff and Defendants Dickerson, Marteney, Wimberly, and Spitzer reached a settlement. See Order (Doc. 154).

(Doc. 178);[2] Defendant's Response to Plaintiff's Motion (Doc. 181); Plaintiff's Objection to Defendant's Summary Judgment Motion (Doc. 182). The motions are ripe for review.

## II.     Plaintiff's Amended Complaint

As to Dr. Ramos, Plaintiff alleges as follows:

> [O]n 11-14-16 while being preconfined by security captain Dickerson after informing him his sergeants had me beat[,] I was seen by nurses to where they documented my injury on [a] stick figure diagram. I stated to the nurses that security had me beat by another inmate and seen it happen when it happen and threaten me not to go to medical. The nurses examine me and I tell them that my mouth and teeth are numb, also have pain somewhere to where I hit the floor when I was hit and knocked out. The nurse went and got Doctor Ramos to examine me after they documented all the injury. Doctor Ramos asked officer male Thomas is he going to confinement. Security officer Thomas said yes under investigation per the captain till [sic] we can find out what happen[ed] by reviewing the camera. He's going under investigation. Doctor Ramos stated[,] peaking his head in exam room, take him to confinement I order[ed] a[n] emergency x-ray. At no time did Doctor Ramos examine me as he must. He didn't [confer] with his nurse[s] of the[ir] preliminary examination. He never checked my mouth to see if teeth were cracked . . . . He should have referred me to dental . . . . As a Doctor he

---

[2] The Court set the deadlines for the filing of dispositive motions and responses as June 25, 2020, and July 27, 2020, respectively. See Order (Doc. 166). Defendant filed his Motion on June 25, 2020. The following day, the Clerk of Court removed exhibits A through E because the exhibits contained personal identifiers. The Clerk notified counsel and asked counsel to properly refile the exhibits. Counsel did so on June 26, 2020. The Court finds the Motion and exhibits timely filed.

> failed to treat a known serious injury. He failed to even look for a diagnosis of the various injuries complained about. Doctor Ramos displayed gross negligence, culpable negligence and . . . deliberate indifference.

Doc. 17 at 18 (some punctuation and capitalization modified).

### III.  Summary Judgment Standard of Review

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014)); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted); see Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotations and citation omitted)). In considering a summary judgment motion, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Hornsby-Culpepper, 906 F.3d at 1311 (quotations and citation omitted).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

3

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote and citation omitted); see Winborn v. Supreme Beverage Co. Inc., 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam) ("If the movant satisfies the burden of production showing that there is no genuine issue of fact, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" (quoting Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008))). "A 'mere scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted)).

"The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

### IV. Parties' Positions

Defendant argues that he is entitled to summary judgment in his favor because "Plaintiff has not presented any evidence that [he] was suffering from a serious medical need on November 14, 2016," and regardless, Defendant provided appropriate medical care to Plaintiff. Doc. 177 at 7-10. Defendant

submitted an Affidavit with exhibits. See Docs. 177-1, 177-7, 178-1 to 178-6. In his Affidavit, Defendant avers in pertinent part:

> On November 14, 2016, I was serving as a Medical Officer at the Columbia Correctional Institution.
>
> John Moore III is an inmate in the custody of the Florida Department of Corrections. He is presently serving a forty year sentence after being convicted of Second Degree Murder and Armed Robbery. His prior incarceration history with the Department of Corrections includes several stints of prison time following convictions for Sale of Cocaine, Unarmed Robbery, and Elder Neglect.
>
> On November 14, 2016, inmate Moore was brought to the Emergency Room at the Columbia Correctional Institute. Inmate Moore reported that he was involved in an altercation with an inmate, and was hit in the face with an unknown object on October 31, 2016. Inmate Moore had normal vital signs, was ambulatory, alert, and oriented to person, place, time and situation. Inmate Moore responded to questions verbally.
>
> On November 14, 2016, inmate Moore presented with slight right sided swelling to his face, bruising under his right eye and a reddened right eye. Subjectively, inmate Moore reported numbness on the right side of his face and a tingling sensation. Inmate Moore further reported pain inside of his mouth, and hearing a "clicking" noise when he chewed or opened his mouth.
>
> I examined inmate Moore and reviewed his Emergency Room Record and Florida Department of Corrections Office of Health Services Diagram of Injury. I signed and stamped both of these records. I ordered an x-ray of inmate Moore's facial bones on

> November 14, 2016. On November 15, 2016, Dr. John Thomas, M.D. read the x-ray and determined that inmate Moore's frontal sinuses and maxillary sinuses were clear, inmate Moore's nasal bones and maxillary sinuses were intact, inmate Moore's ethmoid air cells and sphenoid sinuses were clear, and inmate Moore's inferior orbital rimes were unremarkable. Inmate Moore's x-ray of his facial bones was unremarkable, and revealed no fractures.
>
> On November 14, 2016, I further wrote a prescription for inmate Moore for Naproxen[], a medication used to treat facial pain.
>
> On November 14, 2016, I diagnosed inmate Moore with complaints of facial pain. The care I provided to inmate Moore was appropriate for his complaints and his presentation. The care was also within the reasonable standard of care for a physician treating a patient with similar minor objective injuries and subjective complaints. I am unaware of any additional diagnoses of injuries to inmate Moore relating to his complaints on November 14, 2016. The injuries I observed, if left unattended, did not pose a substantial risk of serious harm.

Doc. 177-1 at 2-4 (paragraph enumeration and footnotes omitted).

In response, Plaintiff argues that Defendant's counsel did not provide him with documents requested during discovery and that counsel "unlawfully" submitted information in his summary judgment motion that Plaintiff had previously requested. Doc. 182 at 2. He contends that Defendant's Motion does not refute the arguments made in his Motion. Id. at 3. Finally, Plaintiff asserts that "there is one fact in this case still at dispute[:] . . . Did Doctor Greto Ramos

6

fail to examine Plaintiff, and did he deprive Plaintiff follow up care into still complained injuries of nerve damage[?]" Id.

Plaintiff argues in his Motion that Defendant was deliberately indifferent when he failed to examine Plaintiff despite knowing that Plaintiff had a serious medical need requiring his attention on November 14, 2016. See Doc. 176 at 4. Plaintiff further argues that Defendant should have referred him to dental, scheduled him for follow-up care, and/or sent him to the medical unit at RMC. Id. at 7. By not doing so, Defendant left Plaintiff in pain for 30 days. Id. Plaintiff goes on to address discovery that was not answered by Defendant, see id. at 9-10, and his inmate-witness affidavits, see id. at 11.

Defendant responds by asserting that he was not deliberately indifferent to any serious medical need and at most, Plaintiff has raised a difference of opinion which does not rise to the level of a constitutional violation. See Doc. 181.

**V.   Analysis**

"To prevail on [a] § 1983 claim for inadequate medical treatment, [the plaintiff] must show (1) a serious medical need; (2) the health care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury." Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation omitted).

7

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations and citation omitted).

Deliberate indifference to a serious medical need requires "three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted); see Dang, 871 F.3d at 1280; Melton v. Abston, 841 F.3d 1207, 1223 & n.2 (11th Cir. 2016). "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Dang, 871 F.3d at 1280 (quoting Caldwell v. Warden, FCI Talladega, 784 F.3d 1090, 1099-1100 (11th Cir. 2014)).

> An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe Cty., Ala., 116 F.3d 1419, 1425 (11th Cir. 1997), overruled on other grounds by LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate

8

> indifference by delaying the treatment of serious medical needs. See Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994) (citing Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990)).[3] Further, "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Dang, 871 F.3d at 1280. "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" Id. (quoting Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008)).

Considering the parties' positions and reviewing the evidence submitted the Court finds that Plaintiff simply disagrees with the course of treatment Defendant provided. The medical evidence reflects that Plaintiff had an

---

[3] "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citation omitted). However, "[i]t is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (citing Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985)); see Boone v. Gaxiola, 665 F. App'x 772, 774 (11th Cir. 2016).

9

altercation with another inmate on October 31, 2016. Doc. 178-2 at 2. Two weeks later, on November 14, 2016, he reported to the emergency room and was examined by a nurse. Id. The nurse noted that Plaintiff had slight swelling on the right side of his face and bruising under his eye. Id. The nurse also noted that Plaintiff complained of tingling and numbness as well as pain inside of his mouth and a clicking sound when he chews or opens his mouth. Id. The nurse notified Defendant. Id. That same day (November 14, 2016), Defendant ordered an x-ray and prescribed pain medication. Doc. 178-4 at 2; Doc. 178-6 at 2. The x-ray was read the following day by a different physician, and the results were unremarkable. Doc. 178-5.

Whether to refer Plaintiff to a dentist or to RMC and whether to provide a different mode of treatment is a matter of medical judgment that does not amount to deliberate indifference. See Boone v. Gaxiola, 665 F. App'x 772, 774 (11th Cir. 2016) ("A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment." (citing Estelle, 429 U.S. at 107-08). Likewise, Plaintiff's disagreement with Defendant's course of treatment does not support a deliberate indifference claim. See Melton, 841 F.3d at 1224 ("'[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference."

10

(quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). Plaintiff received medical attention, and the evidence shows that Defendant's treatment was not "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Brennan v. Headley, 807 F. App'x 927, 935 (11th Cir. 2020) (quoting Thigpen, 941 F.2d at 1505). Even taking all facts and inferences in the light most favorable to Plaintiff, Defendant is entitled to entry of summary judgment in his favor.

Accordingly, it is

**ORDERED**:

1. Defendant Greto Ramos, M.D.'s Motion for Summary Judgment (Doc. 177) is **GRANTED**.

2. Plaintiff's Affidavit Summary Judgment Motion (Doc. 176) is **DENIED**.

3. The Clerk shall enter judgment in favor of Defendant and against Plaintiff, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 10th day of August, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/6
c:
John Moore, III, #V02153
Counsel of Record